*In re* D.S., a Minor (D.S., a Minor, *et al.*, Petitioners-Appellees and Cross-Appellants, v. R.S. *et al.*, Respondents (The People of the State of Illinois, Appellant and Cross-Appellee)).

Second District    No. 2—98—1022

Opinion filed September 16, 1999.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Pamela M. Monaco, of Department of Children & Family Services, of Aurora, and James D. Skaar, of Smith, Landmeier, Skaar & Elders, P.C., of Geneva, for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The State appeals from an order of the circuit court of Kane County directing the State to prosecute a petition for termination of parental rights filed by the Court Appointed Special Advocates of Kane County, guardian *ad litem* of D.S., a 10-year-old minor, against the minor's parents, R.S. and P.S. The guardian *ad litem* cross-appeals from an order finding that only the State had the authority to prosecute the petition. We affirm both orders.

The record reveals that D.S., along with her older sisters, R.S., R.S., and E.H., were removed from their parents and taken into protective custody on September 9, 1993, due to physical abuse and

environmental neglect. On November 9, 1993, the State filed a petition for adjudication of wardship. On that same day, a hearing was held at which the parents stipulated to the neglect and abuse charges, and the minors were adjudicated wards of the court under the custody and guardianship of the Department of Children and Family Services (DCFS). On November 10, 1993, the court appointed a guardian *ad litem* (hereinafter, the GAL) to represent the four minors.

On July 8, 1997, the GAL, on behalf of D.S., R.S. and R.S., filed a petition for the termination of the parental rights of both parents. E.H. was emancipated at the time of the petition, and it was not brought on her behalf. R.S. and R.S. objected to the termination petition being filed on their behalf. Accordingly, the attorney for the GAL was allowed to withdraw his appearance on their behalf and they were appointed new counsel.

The termination petition brought on behalf of D.S. alleged that R.S. and P.S. were unfit parents in that (1) they both failed to make reasonable efforts to correct the conditions that were the basis of the removal of D.S. from them and (2) they failed to make reasonable progress towards the return of D.S. within 12 months after she was adjudicated a neglected and abused minor, as she had been in foster placement continuously since September 10, 1993, and there was no reason to believe that custody or guardianship of D.S would be restored to them in the near future. The petition further alleged that D.S. had lived continuously with her foster parents for the past six years, since September 1993. The petition also alleged that those foster parents were ready, willing, and able to adopt D.S.

On July 16, 1997, the State filed a motion to dismiss the termination petition, contending that it was the only party allowed to prosecute a termination petition. On August 26, 1997, the trial court ruled that the GAL had the right to file the petition since it was filed by "any adult" as provided for in section 2—13(1) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2—13(1) (West 1998)) but reserved ruling on whether the GAL had the right to prosecute the petition. The court further ruled that D.S. did not have standing to file the petition in an individual capacity because she was not an adult. On September 7, 1997, the trial court ruled a termination petition cannot be prosecuted by any party other than the State and denied the GAL's motion to prosecute the petition. However, the court refused to dismiss the petition, noting that the court could direct the State to prosecute the petition. The court then scheduled a permanency review hearing, stating that it would determine whether to direct the State to prosecute the termination petition based on the outcome of that hearing.

At the permanency review hearing held on January 16, 1998, the

trial court found that the appropriate permanency goal was guardianship with the foster parents and that this was in the best interests of the child due to the length of current placement and the lack of success at past attempts at reunification. The court also noted that it was not ruling out the permanency goal of substitute care pending court determination on parental rights. On May 26, 1998, the trial court entered an order changing the permanency goal to substitute care pending a petition to terminate parental rights. The court then ordered the State to prosecute the termination petition filed by the GAL on behalf of D.S.

The two issues raised on appeal are (1) whether the trial court could properly allow the filing of the petition by the GAL and then order the State to prosecute the termination petition, and (2) whether the trial court correctly concluded that the GAL could not prosecute the petition.

■ We will first examine the applicable statute for guidance as to who is allowed to file a termination petition and whether the court has authority to order the State to prosecute such a petition. Under the general provisions of the Act, the statute identifies the general role of the State by stating, "[t]he State's Attorneys of the several counties shall represent the people of the State of Illinois in proceedings under [the] Act in their respective counties." 705 ILCS 405/1—6 (West 1998). Section 2—28(4)(b) of the Act currently provides that when return home is not selected as a permanency goal, the State's Attorney may file a motion to terminate parental rights of any parent who is unfit or has failed to make reasonable efforts to correct the conditions that led to the removal of the child or reasonable progress toward the return of the child. 705 ILCS 405/2—28(4)(b) (West 1998). However, the filing of petitions under the Act is not limited to the State's Attorney. *In re J.M.*, 245 Ill. App. 3d 909, 918 (1993). Section 2—13(1) of the Act plainly provides in relevant part:

> "*Any adult person*, any agency or association by its representative *may file*, or the court on its own motion, consistent with the health, safety and best interests of the minor may direct the filing through the State's Attorney of *a petition in respect of a minor under this Act.*" (Emphasis added.) 705 ILCS 405/2—13(1) (West 1998).

Section 2—13(4) further provides:

> "If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under section 2—29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing." 705 ILCS 405/2—13(4) (1998).

Furthermore, the current version of section 2—13(4) provides that "[i]n addition to the foregoing, the petitioner, by motion, may request the termination of parental rights *** at any time after the entry of a dispositional order." 705 ILCS 405/2—13(4) (West 1998).

From the foregoing, it is clear that the GAL was entitled to *file* a termination petition in the present case. The State claims that it had exclusive authority to file the petition because section 2—28(4)(b) of the Act currently states that it may file a termination petition (705 ILCS 405/2—28(4)(b) (West 1998)). However, we find that argument to be unpersuasive. Although section 2—28(4) does indicate that the State's Attorney may file a termination petition if the appropriate circumstances exist, it does not preclude filing by a party other than the State's Attorney, and we merely find that section to be consistent with the clear mandate of the statute that any adult person, any agency, or the State's Attorney may file a petition under the Act (see 705 ILCS 405/2—13(1) (West 1998)).

Having determined that the GAL was entitled to file the petition in the present case, we turn to the other issues raised by the parties. The State maintains that it has unlimited discretion in determining whether to prosecute such petitions because it is charged with the responsibility to consider not only the best interests of the child but also the broader purposes of the Act, including reunification of the family unit and the preservation of family ties, in making a decision to prosecute. It argues that the case law supportive of the position that the court may order the State to prosecute various petitions under the Act is distinguishable from the present case.

D.S. argues that she has a statutory and constitutional right to prosecute her petition. She contends that forcing the State's Attorney to prosecute the petition and not allowing her to do so would compromise her case. She notes that the right to prosecute the petition includes the right to open and close at trial and many important trial strategy decisions such as what evidence to present and the most effective order of calling witnesses. In the alternative, she contends that the trial court properly ordered the State to prosecute the petition.

The State relies on *People v. Piccolo*, 275 Ill. 453 (1916), in support of its position. In *Piccolo*, Bertha B. Howell filed a petition charging that the minor was a delinquent child within the meaning of the Juvenile Court Act (Hurd's Stat. 1916, at 242). *Piccolo*, 275 Ill. at 454. The trial court entered an order finding the minor to be delinquent. *Piccolo*, 275 Ill. at 454. The parents of the child appealed. *Piccolo*, 275 Ill. at 454. However, the supreme court dismissed the appeal, noting that the Act gave Howell the authority to file a petition, but the people became "the real party complainant" upon the filing of the petition

and "must prosecute the proceeding." *Piccolo*, 275 Ill. at 455. Since the appellant parents failed to name the State as a party on appeal and the State did not file an appearance on appeal, the trial court dismissed the parents' appeal for lack of jurisdiction. See *Piccolo*, 275 Ill. at 455-56.

While *Piccolo* may be support for the notion that a party other than the State may not prosecute a petition under the Act, it does not address the scope of the court's authority to order the State to prosecute a petition under the Act. The Illinois Supreme Court, however, did consider that issue in *In re J.J.*, 142 Ill. 2d 1 (1991). There, the DCFS filed three petitions for adjudication of wardship. *In re J.J.*, 142 Ill. 2d at 4. The State's Attorney moved to dismiss the petitions, and the GAL for the minors objected to the State's motion to dismiss. *In re J.J.*, 142 Ill. 2d at 4. The trial court dismissed the petitions, finding that under the separation of powers doctrine it was without authority to require the State to proceed to prosecute the case. *In re J.J.*, 142 Ill. 2d at 4. On appeal, the State argued before the supreme court that under *Piccolo* the State was the real party in interest and, therefore, only the State's Attorney had the power to decide whether to proceed to prosecute such actions. *In re J.J.*, 142 Ill. 2d at 6. In rejecting the State's position, the supreme court noted that dependency and neglect proceedings brought pursuant to the Act are civil, not criminal, in nature and, therefore, the evil of a court's attempting to invade the exclusive province of the State's Attorney in controlling the initiation and management of criminal litigation is absent in dependency and neglect proceedings, where both the State's Attorney and the court are charged with the duty of ensuring that the best interests of the minor, the minor's family, and the community are served. *In re J.J.*, 142 Ill. 2d at 8-9. Finally, the court determined that, even though the prosecution of a petition alleging abuse of a minor is the responsibility of the State's Attorney, the court may nonetheless order the State's Attorney to prosecute such a petition against its wishes if it is determined by the court to be in the best interests of the minor. *In re J.J.*, 142 Ill. 2d at 11.

Similarly, this court in *In re J.M.*, 245 Ill. App. 3d 909 (1993), addressed the issue of the trial court's authority to order the State to prosecute petitions filed under the Act. There, the State filed a neglect petition and the respondent parents filed a dependency petition, alleging that they had "good cause" for being relieved of all residual parental rights and responsibilities. *In re J.M.*, 245 Ill. App. 3d at 911. The trial court found the child neglected and denied the dependency petition. *In re J.M.*, 245 Ill. App. 3d at 916. On appeal, the parents argued that the trial court erred in not ordering the State's Attorney

to prosecute the dependency petition. *In re J.M.*, 245 Ill. App. 3d at 918. The State, on the other hand, took the position that the trial court had no authority to order the State's Attorney to prosecute a petition filed under the Act. *In re J.M.*, 245 Ill. App. 3d at 918. The reviewing court found that the trial court did have the power to order the State to prosecute the dependency petition. *In re J.M.*, 245 Ill. App. 3d at 919. However, the court further found that, because the two petitions sought mutually exclusive outcomes, the trial court did not err in refusing to do so. *In re J.M.*, 245 Ill. App. 3d at 919. In reaching its conclusion that the court had the power to order the State to prosecute, the court relied on *People ex rel. Davis v. Vazquez*, 92 Ill. 2d 132 (1982), where our supreme court held that ordering the State's Attorney to file a petition in respect of a minor is not an impermissible exercise by the judicial branch of powers belonging exclusively to the executive branch and does not violate the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1). *In re J.M.*, 245 Ill. App. 3d at 918. The *In re J.M.* court further noted that the holding in *Vazquez* had been extended by *Sullivan v. Sullivan*, 110 Ill. App. 3d 714 (1982), which held that a trial court has the power to order the State's Attorney to *prosecute* petitions under the Juvenile Court Act. *In re J.M.*, 245 Ill. App. 3d at 918.

■ Based on the above-mentioned authority, we find that the trial court in the present case did not err in ordering the State to prosecute the termination petition. Contrary to the State's assertions, we find *In re J.J.* and *In re J.M.* to be indistinguishable from the present case. Although *In re J.J.* involved petitions for adjudication of wardship and *In re J.M.* involved a dependency petition, we do not find those facts to be significant because in both instances the parents' rights to care and custody were to be affected, and in the case of the dependency petition in *In re J.M.*, like the termination petition in the instant case, the extinguishment of parental rights was at stake. We also find unpersuasive the State's contention that it cannot be forced to prosecute because it alone is charged with the responsibility of considering not only the best interests of the child but the broader purposes of the Act, including the preservation of family ties. *In re J.J.* makes it clear that it is the juvenile court as well as the State's Attorney that is responsible to ensure that the best interests of the minor, the minor's family, and the community are served, which are the overriding purposes of the Act (705 ILCS 405/1—2(1) (West 1998)). *In re J.J.*, 142 Ill. 2d at 8-9. Thus, the juvenile court may order the State to prosecute when consistent with the overriding purposes of the Act. Here, we find no error in the court's decision to order the State to prosecute the petition given the length of time D.S. had been in foster care

placement and the fact that there was some indication in the record that the parents failed to make reasonable progress toward the return of the child or to correct the conditions that led to her removal.

■ Turning to D.S.'s claim that the GAL should be allowed to prosecute the petition, we note that a majority of jurisdictions that have considered the issue clearly hold that, absent statutory authority, private individuals have no standing to prosecute proceedings to terminate parental rights. *In re Termination of Parental Rights of P.A.M.*, 505 N.W.2d 395, 397-98 (S.D. 1993). Here, the Act in question does not specifically give private parties the right to prosecute termination petitions under the Act. Thus, Illinois case law, consistent with a majority of other jurisdictions, suggests that only the State may prosecute termination petitions. In *Piccolo*, our supreme court held that, upon the filing of a petition under the Act, the State becomes the real party in interest *and must prosecute the proceeding*. *Piccolo*, 275 Ill. at 455. Additionally, in *In re J.J.*, the supreme court reiterated that the prosecution of a petition under the Act is the responsibility of the State's Attorney. *In re J.J.*, 142 Ill. 2d at 11. Accordingly, we hold that the State's Attorney has the sole right to prosecute termination petitions filed pursuant to the Act.

*In re Marriage of T.H.*, 255 Ill. App. 3d 247 (1993), relied upon by D.S., is not helpful to her position, as it did not address the issue involved in the present case. There, the GAL of two minors filed a petition to terminate the parental rights of the father, who had murdered the children's mother and was serving a 55-year prison sentence. *In re T.H.*, 255 Ill. App. 3d at 249. Shortly after the termination petition, the father's relatives filed petitions to adopt. *In re T.H.*, 255 Ill. App. 3d at 249. The issue on appeal was whether the trial court erred in ruling on the GAL's termination petition before considering the petition to adopt. *In re T.H.*, 255 Ill. App. 3d at 250-51. Thus, *In re T.H.* did not specifically address the issue here, and we do not find *In re T.H.* to be controlling in light of our supreme court's rulings to the effect that the State must prosecute petitions brought under the Act.

Although we hold that only the State is vested with authority to prosecute termination petitions, we note that the minor in the present case is not without rights at the proceeding. Section 1—5 of the Act provides that she has the right to be represented by counsel at the proceeding, to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses and examine pertinent court files and records. 705 ILCS 405/1—5(1) (1998). Given D.S.'s significant opportunity to be heard at the proceeding, we find no merit to her contention that her constitutional rights would be compromised by ordering the State's Attorney to prosecute the petition.

Our resolution of the foregoing issues renders moot the remaining contentions raised by the parties. For the foregoing reasons, we affirm the orders of the circuit court of Kane County.

Affirmed.

COLWELL and HUTCHINSON, JJ., concur.