763 N.E.2d 251 (2001)
198 Ill.2d 309
261 Ill.Dec. 281
In re D.S., a Minor (D.S. et al., Appellees and Cross-Appellants,
v.
R.S. et al.; The People of the State of Illinois, Appellant and Cross-Appellee).
No. 88460.
Supreme Court of Illinois.
June 21, 2001.
As Modified on Denial of Rehearing February 4, 2002.
*252 James E. Ryan, Attorney General, Springfield, David R. Akemann, States's Attorney, St. Charles (Joel D. Bertocchi, Solicitor General, William L. Browers, Lisa Ann Smith, Lisa Anne Hoffman, Assistant Attorneys General, Chicago, Norbert J. Goetten, Martin P. Moltz and Gregory L. Slovacek, Office of the State's Attorneys Appellate Prosecutor, Elgin, of counsel), for the People.
James D. Skaar, of Smith, Landmeier, Skaar & Elders, P.C., of Geneva, for appellees and cross-appellants.
Bruce A. Boyer and Christina Gabriel Kanelos, Chicago, for amicus curiae Children & Family Justice Center.
Renee Goldfarb, Kenneth T. McCurry, Nancy G. Kisicki, Assistant State's Attorneys, Chicago, for amicus curiae Richard A. Devine, Cook County State's Attorney.
Thomas Grippando, Lee Ann Lowder, Office of the Public Guardian, Chicago, for amicus curiae Patrick T. Murphy, Cook County Public Guardian.
Justice McMORROW delivered the opinion of the court:
The principal issue presented in this appeal is whether the constitutional doctrine of separation of powers, contained in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const.1970, art. II, § 1), is violated when a circuit court issues an order directing the State's Attorney to prosecute a petition for the termination of parental rights, after the court has set a permanency goal for the minor consisting of substitute care pending a court determination on the termination petition. The circuit court of Kane County, after selecting its permanency goal for D.S., ordered the State's Attorney's office to prosecute a pending petition to terminate parental rights after the State had previously indicated that it would not undertake such prosecution. The State's Attorney appealed. The appellate court affirmed the judgment of the circuit court. 307 Ill.App.3d 249, 240 Ill.Dec. 464, 717 N.E.2d 557. This court allowed the State's petition for leave to appeal. 177 Ill.2d R. 315(a). For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND
On September 9, 1993, D.S. and her three older sisters, R.S., R.S., and E.H., were removed from the home of their parents and taken into protective custody by the Department of Children and Family Services (DCFS) based upon evidence that they were neglected and abused minors.[1] *253 Specifically, the State alleged in its "Second Amended Petition for Adjudication of Wardship" that the minors were subject to environmental neglect because the family home had been declared unfit for human habitation by the City of Aurora. The petition further alleged that the minors had been abused because their father presented a substantial risk of physical harm to them. On November 9, 1993, the children's parents waived an adjudicatory hearing and stipulated that the minors were environmentally neglected and abused. The circuit court adjudicated the minors to be wards of the court and ordered that they remain in the custody and guardianship of DCFS until further order. On November 10, 1993, the circuit court appointed CASA Kane County, Inc., a social service agency, as guardian ad litem (hereinafter GAL) to represent the minors.
On July 8, 1997, the GAL filed a verified petition in the circuit court to terminate the parental rights of the minors' parents. Count I of the termination petition was brought by the GAL on behalf of D.S. Count I of this petition was also brought by D.S., individually. Count II of the petition was brought by the GAL on behalf of R.S. and her sister R.S.[2] Both minor sisters objected to the termination petition filed on their behalf, stating that they did not wish their parents' rights to be terminated as to them. Accordingly, the attorney for the GAL withdrew his appearance on their behalf and they were appointed new counsel.
The petition to terminate parental rights proceeded solely as to D.S. The petition alleged that the parental rights of both of D.S.'s natural parents should be terminated because the parents were unfit in four respects. Specifically, the termination petition alleged that D.S.'s parents were unfit because they had failed to maintain a reasonable degree of interest, concern or responsibility with respect to D.S.'s welfare; had continuously and repeatedly neglected D.S. since her removal; had failed to protect D.S. from an injurious environment; and had failed to make reasonable efforts to correct the conditions that were the basis for removal of D.S. as well as reasonable progress toward the return of D.S. within 12 months after she was adjudicated neglected and abused. 750 ILCS 50/1(D)(b), (D)(d), (D)(g), (D)(m) (West 1998).
The petition to terminate parental rights stated that D.S. had resided with her foster parents continuously since the shelter care hearing in September, 1993, and alleged that the foster parents were "ready, willing and able to adopt [D.S.]" after the rights of the natural parents were terminated. The petition further alleged that "[t]he Kane County State's Attorney * * * has in the exercise of its discretion decided not to seek termination of parental rights in this proceeding," and requested that the circuit court "guarantee[ ] [D.S. and the GAL] the right to prosecute this petition."
In response, the State filed with the circuit court a motion to dismiss the termination petition filed by the GAL and D.S. The dismissal motion alleged that the State's Attorney is the only party authorized to prosecute a petition to terminate parental rights under the Juvenile Court Act. Because the State's Attorney's office, in the exercise of its discretion, had declined to seek termination of parental rights in this matter, the motion concluded that the petition must be dismissed.[3]
*254 On August 26, 1997, the circuit court held that the GAL had standing to file (as opposed to prosecute) the petition to terminate parental rights on behalf of D.S. under section 2-13(1) of the Juvenile Court Act of 1987 (705 ILCS 405/2-13(1) (West 1998)), which provides in relevant part that "any adult person * * * may file * * * a petition with respect of a minor under this Act." The circuit court further ruled that D.S., as a minor, lacked both the standing and capacity to proceed individually to file a petition to terminate her parents' rights. Therefore, the circuit court granted the State's oral motion to dismiss D.S., individually, as a petitioner. The circuit court, however, reserved ruling on the question of whether the GAL had the authority to prosecute the termination petition.
On September 9, 1997, the circuit court denied the GAL's request to prosecute the petition to terminate parental rights. The court ruled that "there is no support in current Illinois law to allow for a termination petition to be prosecuted by any party other than the State," and that "the case law and the statute is very clear that it is within the sole discretion of the State's Attorney's Office to prosecute all proceedings." The circuit court further observed that it would be "contrary to public policy" as expressed in the Juvenile Court Act to allow any party other than the State to prosecute a termination petition.
The circuit court, however, did not dismiss the termination petition. The court ruled that the State had until September 23, 1997, to decide whether it would prosecute the petition filed by the GAL. On September 17, 1997, the State renewed its motion to dismiss the GAL's petition to terminate parental rights. The State alleged in its motion that "[a]fter consideration of the facts and circumstances which exist in the instant case at this time, and after considering the best interests of [D.S.], the People do not believe it is appropriate to proceed with a prosecution of the [termination petition] at this time."
On September 23, 1997, the circuit court denied the State's motion to dismiss the termination petition, pending a permanency review hearing with respect to the future status of D.S. In the course of his ruling, the circuit court judge observed that "with the addition to the Juvenile Court Act of the permanency review statute * * * the court has increased authority to direct the permanency goal. * * * If the court sets a permanency goal of adoption, then I believe that the court can direct * * * the State to prosecute a petition to terminate parental rights."
On October 28, 1997, the circuit court conducted the permanency review hearing. The court entered an order finding that DCFS's recently determined permanency goal for D.S. of foster home placement, with guardianship to remain in DCFS, was "not an appropriate goal." The court also noted in its order that the State still did "not wish to proceed" with respect to the petition to terminate parental rights filed on D.S.'s behalf.
Another permanency review hearing was conducted by the circuit court with respect to D.S. on January 16, 1998. In its order, the circuit court ruled that the appropriate permanency goal for D.S. was to place her permanent guardianship in her foster parents. The court found that this goal was in the best interests of D.S. "due to the length of current placement" (D.S. had been in the protective custody of her foster parents since 1993), D.S.'s "emotional and physical status," and "the lack of success at past attempts at reunification." The circuit court further ordered that "[a]ll parties shall work toward completion of and success of the permanency goal entered herein." The court, however, specifically *255 stated in its order that it was not ruling out the permanency goal of substitute care pending a court determination on the termination of parental rights.
On March 24, 1998, the State again renewed its motion to dismiss the petition to terminate parental rights filed by the GAL, stating that it would, "once again, decline to prosecute said petition." On March 31, 1998, in accordance with effectuating the court's permanency goal of placing permanent guardianship of D.S. in her foster parents, DCFS filed with the circuit court a motion to vacate DCFS's guardianship of D.S., terminate DCFS's wardship as to D.S., and to close D.S.'s case. DCFS also filed a motion to appoint D.S.'s foster parents as guardians of D.S.
On May 26, 1998, the circuit court conducted a hearing regarding the entry of an agreed order with respect to the guardianship of D.S. The record reveals that the mother of D.S. signed a letter of consent to the guardianship, and that the GAL, D.S.'s foster parents and D.S.'s mother agreed to the terms of the agreed guardianship order. Although the father of D.S. had previously indicated that he would also agree to the order, during the hearing he declined to sign a letter of consent because he had reservations with respect to restrictions upon his visitation with D.S. Based upon the best interests of D.S., the circuit court then ordered that the permanency goal for D.S. be changed to substitute care with D.S.'s foster parents (with the guardianship of D.S. to remain in DCFS) pending the outcome of the proceedings to terminate parental rights. The circuit court directed the State to prosecute the termination petition which had been filed by the GAL on behalf of D.S. The circuit court judge then recused himself from hearing the termination proceedings in this matter.
The State filed a motion requesting the circuit court to reconsider its ruling directing the State to prosecute the petition to terminate parental rights. The circuit court held a hearing on the State's motion to reconsider on July 7, 1998. During the hearing, the circuit court noted that, pursuant to provisions of the Juvenile Court Act, it has the "responsibility to determine what permanency goal is in the minor child's best interests." The circuit court explained that after determining that the appropriate permanency goal for D.S. was substitute care pending a legal determination on the termination of parental rights petition, the court then had the responsibility "to set forth or consider what tasks and what orders need to be made in order to accomplish the permanency goal." Because D.S. had been in foster care placement from 1993 to 1998, and to achieve the permanency goal set in this case, the court ordered the office of the State's Attorney to prosecute the termination of parental rights petition. The circuit court then entered an order denying the State's reconsideration motion on the basis that the court's direction to the State to prosecute the termination petition was "appropriate" and "in furtherance of the court-ordered goal of substitute care pending termination."
On appeal, the State alleged that the circuit court erred in two respects: allowing the GAL to file the petition to terminate parental rights, and ordering the State to prosecute the termination petition. The GAL filed a cross-appeal, contending that the circuit court erred in holding that the State's Attorney has the sole authority to prosecute a petition for the termination of parental rights.
The appellate court affirmed the judgment of the circuit court. 307 Ill.App.3d 249, 240 Ill.Dec. 464, 717 N.E.2d 557. The appellate court rejected the argument advanced by the State that the GAL was not entitled to file a petition to terminate parental *256 rights on behalf of D.S. The court observed that, under the plain language of section 2-13(1) of the Juvenile Court Act (705 ILCS 405/2-13(1) (West 1998)), "[a]ny adult person * * * may file * * * a petition in respect of a minor under this Act." The appellate court determined that, in light of this broad statutory provision, the circuit court did not commit error in allowing the GAL to file the termination petition. 307 Ill.App.3d at 253, 240 Ill.Dec. 464, 717 N.E.2d 557.
Although the appellate court determined that the circuit court properly allowed the GAL to file the termination petition, the court agreed with the State that the office of the State's Attorney is vested with the sole authority to prosecute petitions to terminate parental rights under the Juvenile Court Act. Relying upon this court's prior decisions in In re J.J., 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991), and People v. Piccolo, 275 Ill. 453, 114 N.E. 145 (1916), the appellate court concluded that it is well settled that upon the filing of a petition under the Juvenile Court Act, the State becomes the real party in interest and has the responsibility of prosecuting the proceedings. Accordingly, the appellate court held that the circuit court did not err in denying the request by the GAL to prosecute the termination petition.
Having held that the State's Attorney is vested with the sole right to prosecute termination petitions under the Juvenile Court Act, the appellate court then addressed the question of the circuit court's authority to order the State to prosecute a termination petition. Placing principal reliance upon our decision in In re J.J., the appellate court concluded that "the juvenile court may order the State to prosecute [a termination petition] when consistent with the overriding purposes of the [Juvenile Court] Act." 307 Ill.App.3d at 255, 240 Ill.Dec. 464, 717 N.E.2d 557. The appellate court reasoned that "In re J.J. makes it clear that it is the juvenile court as well as the State's Attorney that is responsible to ensure that the best interests of the minor, the minor's family, and the community are served, which are the overriding purposes of the Act." 307 Ill. App.3d at 255, 240 Ill.Dec. 464, 717 N.E.2d 557. Applying this reasoning to the matter before it, the appellate court panel concluded that "we find no error in the [circuit] court's decision to order the State to prosecute the petition given the length of time D.S. has been in foster care placement and the fact that there was some indication in the record that the parents failed to make reasonable progress toward the return of the child or to correct the conditions that led to her removal." 307 Ill.App.3d at 255-56, 240 Ill.Dec. 464, 717 N.E.2d 557.
We allowed the State's petition for leave to appeal. 177 Ill.2d R. 315(a). We also allowed amicus curiae briefs to be filed by the State's Attorney of Cook County, the Cook County public guardian, and the Children and Family Justice Center of the Northwestern University School of Law.
In its brief to this court, the State asserts that it "do[es] not take issue" with the appellate court's ruling that, pursuant to section 2-13(1) of the Juvenile Court Act (705 ILCS 405/2-13(1) (West 1998)), the GAL had statutory authority to file the termination petition. The State confines its appeal to the sole question of whether the circuit court's direction to the office of the State's Attorney to prosecute the petition to terminate parental rights brought on behalf of D.S. violates the doctrine of separation of powers found in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const.1970, art. II, § 1).
Our grant of the State's petition also brings before us the GAL's request for cross-relief. 155 Ill.2d R. 318(a). The *257 GAL contends that the lower courts erred in two respects. First, the GAL asserts that the courts below improperly barred D.S. from individually filing the termination petition. Second, the GAL maintains that the lower courts erred in holding that the State possesses the sole authority to prosecute a petition to terminate parental rights under the Juvenile Court Act.

ANALYSIS
The purpose of the Juvenile Court Act is to secure for each minor subject to it the care and guidance that will serve "the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2(1) (West 1998). The goals of the Act include preserving and strengthening family ties "whenever possible," but if reunification is delayed or fails, then the best available placement is to be made to provide permanency for the child. 705 ILCS 405/1-2(1) (West 1998). To effectuate the intended purposes of the Act, the Illinois General Assembly has instructed that this legislation is to be "liberally construed" (705 ILCS 405/1-2(4) (West 1998)) and that "[i]n all proceedings under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act." 705 ILCS 405/1-2(2) (West 1998).
Proceedings under the Juvenile Court Act are initiated by the filing of a petition [4] pursuant to section 2-13(1) of the Act (705 ILCS 405/2-13(1) (West 1998)), which provides, in relevant part:
"Any adult person, any agency or association by its representative may file, or the court on its own motion, consistent with the health, safety and best interests of the minor may direct the filing through the State's Attorney of a petition in respect of a minor under this Act."
As stated, in its submissions to this court the State has abandoned the contention advanced below that the GAL lacked statutory authority to file a petition to terminate parental rights on behalf of D.S. The State now correctly acknowledges in its pleadings that section 2-13 of the Act "clearly provides for the filing of the [termination] petition by the GAL."
However, in the petition for cross-relief filed by the GAL with this court, the GAL makes a brief argument that D.S., individually, has a right to a file a petition under the Juvenile Court Act, including a petition to terminate her parents' rights. We disagree. The plain language of section 2-13(1), which provides that a petition may be filed by "[a]ny adult person," establishes that the General Assembly did not contemplate the filing of petitions under the Act by minors. This conclusion is supported by the provisions contained in section 2-17 of the Act, wherein the legislature has provided that minors who are the subject of proceedings under the Act must be appointed a GAL whose duty it is to "represent the best interests of the minor and * * * present recommendations to the court consistent with that duty." 705 ILCS 405/2-17(1) (West 1998). Therefore, minors, such as D.S., are assured representation by a GAL who is obliged to advocate for their best interests and file the appropriate pleadings to protect their rights. Accordingly, we conclude that a minor, individually, may not file a petition under the Juvenile Court Act.
*258 We now turn to the principal issue raised in this appeal: whether the circuit court's order, directing the State's Attorney to prosecute the petition to terminate parental rights after the court had set the permanency goal for D.S. as substitute care pending a determination on the termination petition filed by the GAL, was unconstitutional because it violated the doctrine of separation of powers set forth in article II, section 1 of the Illinois Constitution of 1970 (Ill. Const.1970, art. II, § 1). Because this issue presents a question of law, our review is de novo. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill.2d 191, 205, 229 Ill.Dec. 522, 692 N.E.2d 295 (1998).
The Illinois Constitution provides that the legislative, executive and judicial branches are separate, and that "[n]o branch shall exercise powers properly belonging to another." Ill. Const.1970, art. II, § 1. In "`both theory and practice, the purpose of the [separation of powers] provision is to ensure that the whole power of two or more branches of government shall not reside in the same hands.'" Best v. Taylor Machine Works, 179 Ill.2d 367, 410, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997), quoting People v. Walker, 119 Ill.2d 465, 473, 116 Ill.Dec. 675, 519 N.E.2d 890 (1988). However, the doctrine of separation of powers "was not designed to achieve a complete divorce among the three branches of government" (In re J.J., 142 Ill.2d at 7, 153 Ill.Dec. 239, 566 N.E.2d 1345; Strukoff v. Strukoff, 76 Ill.2d 53, 58, 27 Ill.Dec. 762, 389 N.E.2d 1170 (1979)) and does not require "governmental powers to be divided into rigid, mutually exclusive compartments" (In re J.J., 142 Ill.2d at 7, 153 Ill.Dec. 239, 566 N.E.2d 1345; In re Estate of Barker, 63 Ill.2d 113, 119, 345 N.E.2d 484 (1976)). Because the "separation of the three branches of government is not absolute and unyielding" (Best, 179 Ill.2d at 411, 228 Ill.Dec. 636, 689 N.E.2d 1057), the doctrine of separation of powers "is not contravened merely because separate spheres of governmental authority may overlap" (Best, 179 Ill.2d at 411, 228 Ill.Dec. 636, 689 N.E.2d 1057; see also People ex rel. Devine v. Murphy, 181 Ill.2d 522, 530, 230 Ill.Dec. 220, 693 N.E.2d 349 (1998); McAlister v. Schick, 147 Ill.2d 84, 94, 167 Ill.Dec. 1021, 588 N.E.2d 1151 (1992); In re J.J., 142 Ill.2d at 7, 153 Ill.Dec. 239, 566 N.E.2d 1345).
It has long been established that, upon the filing of a petition under the Juvenile Court Act, the "people become the real party complainant and must prosecute the proceeding." People v. Piccolo, 275 Ill. 453, 455, 114 N.E. 145 (1916); see also In re J.J., 142 Ill.2d at 6, 153 Ill.Dec. 239, 566 N.E.2d 1345. Section 1-6 of the Juvenile Court Act provides that the people of the State of Illinois shall be represented by the State's Attorney in proceedings under the Act. 705 ILCS 405/1-6 (West 1998). The State contends that because prosecutorial discretion is a purely executive function of the office of the State's Attorney, the circuit court violated the principle of the separation of powers when it ordered the State's Attorney to prosecute the termination petition filed by the GAL on behalf of D.S., even though the State's Attorney's office had declined to prosecute the petition at that time.
The State acknowledges that the overriding purpose of the Juvenile Court Act is to secure the best interests of the minor and the community, and, if possible, to preserve and strengthen the minor's family ties. The State contends, however, that the goals of the Act "must be accomplished within the framework of the constitutional provisions requiring the separation of powers." The State proffers the general argument that "[n]o section of the Juvenile Court Act can operate to grant a court the *259 authority to exercise powers properly belonging to the executive branch," but does not make citation to any specific section of the Act which may allegedly violate the separation of powers principle. Rather, the primary focus of the argument advanced by the State is that the appellate court erred in holding that this court's decision in In re J.J., 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991), provided the circuit court with the duty and authority to order the State to prosecute the termination petition. The State contends that the reasoning in our decision in In re J.J. is inapposite because that case is factually distinguishable from the matter at bar. We disagree with the State's contentions.
In In re J.J., petitions for adjudication of wardship were filed by DCFS with respect to three minor children who had allegedly been abused. The State's Attorney moved to dismiss these petitions, and the GAL objected. The circuit court dismissed the petitions for adjudication of wardship without considering the merits because the court concluded that, under the doctrine of separation of powers, it was "`without legal authority or precedent to require the State to proceed with the prosecution of this case.'" In re J.J., 142 Ill.2d at 4, 153 Ill.Dec. 239, 566 N.E.2d 1345. The circuit court accepted the argument proffered by the State that the office of the State's Attorney had the exclusive right to request dismissal of a petition for adjudication of wardship because of its role in the executive branch of government, and that any judicial interference with this executive discretion violated the separation of powers.
On appeal, this court rejected the State's attempt to narrowly and rigidly compartmentalize the exercise of executive and judicial powers with respect to abuse, neglect and dependency proceedings conducted pursuant to the Juvenile Court Act. We agreed with the State's assertion that it had been well settled that "the office of the State's Attorney enjoys wide discretion in both the initiation and management of criminal litigation." In re J.J., 142 Ill.2d at 6-7, 153 Ill.Dec. 239, 566 N.E.2d 1345. However, we held that the "evil of a court's attempting to invade the exclusive executive discretion of the constitutional office of the State's Attorney in controlling the initiation and management of criminal litigation is absent in dependency and neglect proceedings, where both the State's Attorney and the court are charged with the duty of ensuring that * * * the best interests of the minor, the minor's family and the community are served." In re J.J., 142 Ill.2d at 8-9, 153 Ill.Dec. 239, 566 N.E.2d 1345.
We found that under the provisions of the Juvenile Court Act, the circuit court had "not only the authority but the duty to determine whether the best interests of the minor will be served by dismissing a petition alleging abuse of a minor." In re J.J., 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 N.E.2d 1345. For example, we noted that the legislature determined that in all proceedings brought under the Act, the court is vested with the authority to "`direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to [the] Act.'" In re J.J. 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 N.E.2d 1345, quoting Ill.Rev.Stat.1987, ch. 37, par. 801-2(2) (now 705 ILCS 405/1-2(2) (West 1998)). We further observed that, in section 2-21 of the Act, the legislature specifically instructed that "`[a]fter hearing the evidence'" presented during an adjudicatory hearing, "`the court shall make * * * a finding of whether or not the minor is abused, neglected or dependent,'" and if the court "`finds that the minor is not such *260 a person, the court shall order the petition dismissed and the minor discharged.'" In re J.J., 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 N.E.2d 1345, quoting Ill.Rev.Stat.1987, ch. 37, par. 802-21(1) (now 705 ILCS 405/2-21(1) (West 1998)).
This court reasoned that, under the framework of the Juvenile Court Act, although the prosecution of a petition "is the responsibility of the State's Attorney," the determination of "whether the best interests of the minor will be served by dismissal of a petition * * * is the responsibility of the juvenile court." In re J.J., 142 Ill.2d at 11, 153 Ill.Dec. 239, 566 N.E.2d 1345. Therefore, "when the State moves to dismiss a petition alleging abuse of a minor, the circuit court shall consider the merits of the motion and determine, on the record, whether dismissal is in the best interests of the minor, the minor's family, and the community." In re J.J., 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 N.E.2d 1345. We found that "[o]nly in this way will the circuit court be able to fulfill its duty [under the Act] to ensure the best interests of the minor and `gather information bearing upon the current condition and future welfare of persons subject to [the] Act.'" In re J.J., 142 Ill.2d at 9-10, 153 Ill.Dec. 239, 566 N.E.2d 1345, quoting Ill.Rev.Stat.1987, ch. 37, par. 801-2(2). We further concluded that the circuit court may order the office of the State's Attorney to prosecute a petition under the Act against its wishes if the court determines that such prosecution is in the best interests of the minor. In re J.J., 142 Ill.2d at 11, 153 Ill.Dec. 239, 566 N.E.2d 1345.
In sum, we held in In re J.J. that the statutory duties imposed upon the circuit court by the Juvenile Court Act did not conflict with the role of the State's Attorney under the Act because both the court and the State's Attorney are jointly charged with acting in the best interests of the minor. In re J.J., 142 Ill.2d at 11, 153 Ill.Dec. 239, 566 N.E.2d 1345. Accordingly, the principle of the separation of powers was not violated.
In the matter at bar, the State attempts to factually distinguish our decision in In re J.J. on the basis that "the interest of the protection of the minor [present in In re J.J.] * * * is absent here." The State asserts that, unlike in In re J.J., where the dismissal of the minors' petitions for adjudication of wardship would have denied them the right of access to the protective services of the juvenile court, in the instant cause the best interests of D.S. remain secure despite the State's refusal to prosecute the petition to terminate parental rights. According to the State, the State's Attorney's "failure to prosecute a termination petition does not frustrate the purposes of the Act * * * [as] D.S. is still subject to the court's jurisdiction so the court can fulfill its obligation to see that her best interests are addressed." We find the arguments of the State unpersuasive.
In the present cause, the circuit court, like the court in In re J.J., was charged with carrying out statutory duties imposed by the Juvenile Court Act with the purpose of ensuring the best interests of the minor, D.S. Section 2-28 of the Act requires the circuit court to conduct a permanency hearing within 12 months of the entry of a temporary custody order and at least every six months thereafter. 705 ILCS 405/2-28(2) (West 1998). The statute provides that "[a]t the permanency hearing, the court shall determine the future status of the child." 705 ILCS 405/2-28(2) (West 1998). The circuit court complies with this directive by selecting a permanency goal, from among several listed in section 2-28, which the court finds to be "in the best interest of the child." 705 ILCS 405/2-28(2) (West 1998). Section 2-28 *261 of the Act further provides that, upon completion of the permanency hearing, the court shall enter an order which sets forth the "future status of the minor, including the permanency goal, and any order necessary to conform the minor's legal custody and status to such determination." 705 ILCS 405/2-28(3)(a) (West 1998).
In the matter before us, the circuit court determined that it was in the best interests of D.S. to set a permanency goal of substitute care pending court determination on the termination of parental rights. The parties to this appeal neither dispute the court's authority to set this permanency goal nor challenge the goal itself. We conclude that, under the facts presented, once the circuit court found that this particular permanency goal was in the best interests of D.S., the court had the duty and the authority, pursuant to section 2-28(3)(a) of the Act, to enter any order "necessary to conform the minor's legal custody and status to the goal the court selected." Therefore, under these circumstances, the circuit court appropriately ordered the State's Attorney to prosecute the termination petition as a means of accomplishing the permanency goal found to be in the D.S.'s best interests.
In its submission to this court, the State also raises the contention that our decision today places the office of the State's Attorney in an "ethical dilemma" with respect to Illinois Rule of Professional Conduct 3.1 (134 Ill.2d R. 3.1). We find the State's argument to be without merit. Rule 3.1 provides, in relevant part, that a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law." The plain language of Rule 3.1 prohibits a lawyer from bringing a proceeding that is "frivolous." Actions on the part of the State in compliance with an order of the circuit court would not be deemed "frivolous."
In instances where, as here, reunification between a minor and her family is delayed or fails, section 1-2(1) of the Act directs the circuit court to select "the best available placement to provide permanency for the child." 705 ILCS 405/1-2(1) (West 1998). Indeed, the provisions of the Juvenile Court Act would be rendered meaningless and the functions of the juvenile court would be nullified if the court were powerless to effectuate the permanency goal it found to be in a minor's best interests. A clear example is provided by the matter at bar: if the circuit court does not have the statutory duty and authority to effectuate the permanency goal found to be in the best interests of D.S., it is conceivable that the future status of D.S. could remain in limbo until the time, if ever, the State decides to prosecute the termination petition. As we have recently observed in In re D.L., because "it is not in [a minor's] best interests for his status to remain in limbo for an extended period of time," the circuit court should "consider, in an expedited manner, cases involving [such children], so that the minors whose futures are at stake in [juvenile] proceedings can obtain a prompt, just, and final resolution of their status." In re D.L., 191 Ill.2d 1, 13, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000).
Our decision today is not without precedent. We have previously held that "each branch of government has concurrent powers and responsibilities that are in the nature of parens patriae." In re S.G., 175 Ill.2d 471, 488, 222 Ill.Dec. 386, 677 N.E.2d 920 (1997). The doctrine of parens patriae "represents an expression of the general power and obligation of the government as a whole to protect minors and the infirm." In re S.G., 175 Ill.2d at 488, 222 Ill.Dec. *262 386, 677 N.E.2d 920; People ex rel. Wallace v. Labrenz, 411 Ill. 618, 623-24, 104 N.E.2d 769 (1952). The parens patriae power is codified in the Juvenile Court Act, which specifically charges the circuit court with the duty to act in the best interests of the minor and for the minor's own protection. Labrenz, 411 Ill. at 624, 104 N.E.2d 769. In addition to our decision in In re J.J., the duty and authority of the circuit court to guard the interests of minors in proceedings conducted pursuant to the Juvenile Court Act and to direct the State's Attorney to take actions in accordance with that duty have been repeatedly upheld. See People ex rel. Davis v. Vazquez, 92 Ill.2d 132, 151, 65 Ill.Dec. 262, 441 N.E.2d 54 (1982) (ordering the State to file a petition in respect to a minor under the Juvenile Court Act is not an impermissible exercise by the judicial branch of powers belonging exclusively to the executive branch and therefore does not violate the separation of powers doctrine); In re J.M., 245 Ill.App.3d 909, 184 Ill.Dec. 754, 613 N.E.2d 1346 (1993) (the circuit court possessed the authority to order the State to prosecute a dependency action under the Act); Sullivan v. Sullivan, 110 Ill. App.3d 714, 66 Ill.Dec. 435, 442 N.E.2d 1348 (1982) (there is no separation of powers violation when a circuit court ordered a State's Attorney to prosecute a neglect petition under the Juvenile Court Act).
The State contends, incorrectly, that our decision today contravenes the "deep and broad[ ] societal policies" which recognize the serious and final nature of termination proceedings.
In the matter before us, the circuit court, pursuant to the permanency review provisions of section 2-28 of the Act, determined that the permanency goal in the best interests of D.S. is substitute care pending court determination on termination of parental rights. We stress that "[t]he selection of a permanency goal is not a final determination on the merits with regard to termination of parental rights but, rather, an intermediate procedural step taken for the protection of and best interests of the child." In re K.H., 313 Ill.App.3d 675, 682, 246 Ill.Dec. 451, 730 N.E.2d 131 (2000). It is well settled that "[p]arental rights and responsibilities are of deep human importance and will not be lightly terminated." In re Paul, 101 Ill.2d 345, 351-52, 78 Ill.Dec. 149, 461 N.E.2d 983 (1984). Indeed, it is precisely because "the private interest affected [in termination proceedings] is commanding" (Santosky v. Kramer, 455 U.S. 745, 758, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599, 609 (1982)), that parental rights may be terminated only upon a finding, supported by clear and convincing evidence, that a parent is an "unfit" person as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998)). 705 ILCS 405/2-29(2) (West 1998). Our decision today expresses no opinion with respect to the ultimate disposition of the termination of parental rights proceeding in the case at bar.
In sum, the doctrine of separation of powers does not seek to achieve a complete divorce between the branches of government. In re J.J., 142 Ill.2d at 7, 153 Ill.Dec. 239, 566 N.E.2d 1345. Inevitably, there are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared. Such an overlap of governmental authority does not contravene the separation of powers doctrine. E.g., Best, 179 Ill.2d at 411, 228 Ill.Dec. 636, 689 N.E.2d 1057. As we explained in In re J.J., due to the unique nature of abuse, neglect and dependency proceedings conducted pursuant to the Juvenile Court Act, both the State's Attorney and the circuit court have concurrent obligations to protect the best interests of the *263 minor. Just as the circuit court in In re J.J. had a statutory duty to determine whether the State's motion to dismiss was in the best interests of the minor, the circuit court in the matter at bar had a duty under the statute to set a permanency goal and enter orders to effectuate that goal. The duty and authority vested in the circuit court by the Juvenile Court Act does not offend the separation of powers doctrine. Accordingly, the appellate court did not err in affirming the judgment of the circuit court.
We now turn to the remaining argument raised in the petition for cross-relief (155 Ill.2d R. 318(a)) filed by the GAL. The GAL contends that it should be allowed to prosecute the petition to terminate parental rights on behalf of D.S. The GAL asserts that denying D.S. the opportunity to prosecute the termination petition through her GAL violates rights guaranteed her under the Juvenile Court Act, as well as under the United States and Illinois Constitutions. The GAL further contends that ordering the State's Attorney to prosecute the termination petition, while not allowing the GAL to do so, would compromise D.S.'s case. In the alternative, the GAL asserts that the circuit court appropriately ordered the State's Attorney to prosecute the termination petition. We conclude that the arguments raised in support of the GAL's petition for cross-relief lack merit.
The GAL cites three provisions of the Juvenile Court Act in support of its argument that the GAL should be allowed to prosecute the termination petition. First, relying upon section 1-2(1) of the Act (750 ILCS 405/1-2(1) (West 1998)), the GAL contends that D.S. has a "right to be made available for adoption within a reasonable amount of time after removal from her natural parents, if her natural parents are unfit." Second, pursuant to section 1-2(3)(a) of the Act, the GAL observes that, in all proceedings under the Act, D.S. has the procedural rights of adults unless specifically precluded by laws which enhance the minor's protection. (705 ILCS 405/1-2(3)(a) (West 1998)). Third, the GAL asserts that pursuant to section 1-5 of the Act (705 ILCS 405/1-5(1) (West 1998)), D.S. has the right to counsel, the right to be heard, and the right to present evidence material to these proceedings.
In addition, the GAL asserts that several constitutional rights held by D.S. require that the GAL be allowed to prosecute the termination petition. Specifically, the GAL contends that, pursuant to article I, section 12, of the Illinois Constitution of 1970 (Ill. Const.1970, art. I, § 12), D.S. has the right to freely and promptly obtain a remedy for the grievances alleged in the termination petition. The GAL also makes the general argument that D.S. has the right to due process and equal protection of the laws under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution of 1970 (Ill. Const.1970, art. I, § 2).
Apart from providing citation to the above provisions, the GAL has failed to adequately explain, and we cannot discern, how the statutory and constitutional rights cited by the GAL in the petition for cross-relief would be violated if the office of the State's Attorney, rather than the GAL, prosecutes the termination petition. The GAL has not shown how allowing it to prosecute the petition to terminate parental rights would appreciably add to the ability of the circuit court to guard the welfare of a minor. Indeed, the record in this matter belies the GAL's arguments. Contrary to the position of the GAL that D.S. has been, and will continue to be, without adequate rights during these proceedings, D.S. has been represented by a *264 GAL and counsel whose duty it is to protect the rights of D.S. and advocate for her best interests. In accordance with section 1-5 of the Act (705 ILCS 405/1-5 (West 1998)), D.S.'s GAL has protected her right to be heard and to present evidence material to these proceedings. Further, the circuit court has assured the protection of D.S.'s statutory and constitutional rights throughout the course of this matter.
The Juvenile Court Act contains no provision affording private parties the right to prosecute petitions filed pursuant to the Act. As we noted above, it is well settled that the office of the State's Attorney is charged with prosecuting petitions under the Act, and the State's Attorney and the circuit court share the concurrent duty to ensure the best interests of the child, the child's family, and the community. Our decision today recognizing the statutory duty and authority of the circuit court to guard the interests of minors in proceedings conducted pursuant to the Juvenile Court Act and to compel the State to take action in accordance with that duty will assure that the shared duty will be exercised in the minor's best interests.
In addition, we note that, under the provisions of the Juvenile Court Act, D.S. and the GAL have the right to be actively involved in the termination proceedings. Section 1-5 of the Act provides that D.S. has the right to be represented by counsel, to be present, and to be heard. 705 ILCS 405/1-5(1) (West 1998). Further, as a party to the termination action, the GAL, on behalf of D.S., may question witnesses, present evidence, examine pertinent court files and records, and make arguments to the court. 705 ILCS 405/1-5(1) (West 1998). We therefore conclude that there is no merit to the argument raised by the GAL that the statutory or constitutional rights of D.S. would be compromised by ordering the State to prosecute her petition.

CONCLUSION
For the foregoing reasons, we hold that the order of the circuit court directing the State to prosecute a pending termination petition after setting a permanency goal of substitute care pending court determination on the termination of parental rights did not violate the constitutional doctrine of separation of powers contained in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const.1970, art. II, § 1). We further hold that the GAL does not have authority to prosecute a petition to terminate parental rights pursuant to the Juvenile Court Act. Accordingly, we affirm the judgment of the appellate court.
Affirmed.
Justice THOMAS took no part in the consideration or decision of this case.
NOTES
[1] At the time the minors were removed from the family home, D.S. was 4 years old, R.S. was 8, R.S. was 11, and E.H. was 14.
[2] E.H. was not named in the termination petition because she had already reached the age of emancipation.
[3] A motion to dismiss the petition to terminate parental rights was also filed by DCFS. In its motion, DCFS echoed the arguments advanced by the State.
[4] The Act defines the term "petition" to include any supplemental petitions filed in a case. 705 ILCS 405/1-3(12) (West 1998).