Docket No. 98124–Agenda 10–January 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JEANNIE M. WARD, Appellant.

Opinion filed May 19, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a bench trial in the circuit court of Grundy County, defendant Jeannie M. Ward was found guilty of the offense of distribution of harmful material to a minor (720 ILCS 5/11–21 (West 2000)) and sentenced to 12 months’ conditional discharge, four weekends in the county jail, and a $100 fine. Defendant appealed, arguing that the State had failed to prove her guilty beyond a reasonable doubt. A divided appellate court affirmed defendant’s conviction. 346 Ill. App. 3d 482. We allowed defendant’s petition for leave to appeal (see 177 Ill. 2d R. 315) and now affirm.

BACKGROUND

The following evidence was adduced at trial. On December 27, 2001, at 5:30 or 6 p.m., Jessica Jurzak, who was then almost 13 years old, and her younger sister were in the detached garage of their home. Jessica testified that defendant, whom she had seen on numerous occasions, came into the garage and asked if Jessica’s father, Richard Jurzak, was at home. Jessica replied in the negative. According to Jessica, defendant then placed an envelope on a weight bench that was in the garage and told Jessica to give the envelope to her father.

The envelope, which was admitted into evidence, was a standard white business envelope, measuring approximately 4 inches by 9¼ inches. The envelope was addressed to Richard Jurzak at his home. Although the envelope flap was taped, according to Jessica, the tape “stuck very, very little” and the envelope “was not completely shut.” An uncancelled Christmas postage stamp was affixed in the upper right corner of the envelope, and the notation “J. Jurzak” appeared in the upper left corner in the return-address location. Inside the envelope was a letter from defendant to Richard Jurzak, along with eight photographs, each one with a handwritten note on the reverse side. Some of the photographs were of a sexual nature depicting defendant and/or Richard Jurzak. Defendant stipulated that some of the photographs met the statutory definition of “harmful material.” On the back of one of the sexually explicit photographs was a note from defendant, which began, “Hi, Heather.” Jessica’s mother is Heather Jurzak. Jessica testified that when she saw “J. Jurzak” in the corner of the envelope, she thought the envelope was from a relative and that defendant had somehow obtained it. Jessica opened the envelope and saw the photographs. Jessica and her mother turned over the envelope and photographs to a deputy from the Grundy County sheriff’s office.

Defendant testified that she prepared the envelope and contents, addressed it to Richard Jurzak, taped it shut, and put the notation “J. Jurzak” in the corner. Defendant explained that although she was not married to Richard Jurzak, she was “with him” for a year and that he referred to her as “Jeannie Jurzak.” Defendant, who is the mother of two young children, testified that she did not intend for any children to see the photographs and that she and Richard Jurzak had an understanding that no one else would see the photographs. Defendant denied being in the Jurzaks’ garage on December 27, 2001, and testified that she gave the envelope to a friend, Tammy Reynolds, to deliver to Richard Jurzak. Reynolds, whom defendant admitted could not have been mistaken for her, did not testify at trial.

After closing arguments, the trial court made two preliminary findings. The court found, based on Jessica’s testimony, that defendant herself had delivered the envelope. The court rejected defendant’s testimony regarding Tammy Reynolds as “unreliable and false.” The court also found that the envelope was “sealed,” notwithstanding Jessica’s testimony that the envelope “was not completely shut.” The trial court subsequently found defendant guilty of distributing harmful material to a minor, stating:

“Handing that envelope with the name Jurzak as the respondent with a Christmas stamp on it to a 13-year-old girl and saying here, give this to your dad, runs the risk, under the meaning of the statute, that she may open it, and she did, and therefore, I’m going to find the defendant guilty.”

The trial court subsequently sentenced defendant to 12 months’ conditional discharge, four weekends in the county jail, and a $100 fine. The appellate court affirmed defendant’s conviction. 346 Ill. App. 3d 482. This appeal followed.

ANALYSIS

Defendant’s principal argument on appeal is that the State failed to prove her guilty, beyond a reasonable doubt, of distributing harmful material to a minor.

When reviewing the sufficiency of the evidence of a criminal conviction, it is not the function of this court to retry the defendant. 
People v. Evans
, 209 Ill. 2d 194, 209 (2004). The relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Evans
, 209 Ill. 2d at 209; 
People v. Hopkins
, 201 Ill. 2d 26, 40 (2002).

The harmful material statute under which defendant was charged and convicted sets forth the elements of the offense as follows:

“A person who, with knowledge that a person is a child, that is a person under 18 years of age, or who fails to exercise reasonable care in ascertaining the true age of a child, knowingly distributes to or sends or causes to be sent to, or exhibits to, or offers to distribute or exhibit any harmful material to a child, is guilty of a misdemeanor.” 720 ILCS 5/11–21(a) (West 2000).

In other words, the State was required to prove that defendant had knowledge that Jessica was a child and knowingly distributed harmful material to her.

Initially, we note that any question as to the identity of the person who delivered the subject envelope has been resolved. Although at trial defendant denied being in the Jurzaks’ garage on December 27, 2001, defendant has not challenged on appeal the trial court’s finding that she, and not Tammy Reynolds, delivered the envelope.

As to Jessica’s age, no dispute exists that Jessica was a “child” at the time of the events in question and that defendant had “knowledge” of the same. In addition, no dispute exists that some of the photographs in the envelope that defendant left with Jessica constitute “harmful material.” Indeed, defendant acknowledged at trial that the sexually explicit photographs fall within the statutory definition of “harmful material.”
(footnote: 1)
 The State was also required to prove that any distribution was “knowingly” made. “Knowingly” is defined in the statute as “having knowledge of the contents of the subject matter, or recklessly failing to exercise reasonable inspection which would have disclosed the contents thereof.” 720 ILCS 5/11–21(b)(4) (West 2000). Again, no dispute exists that defendant, having prepared the subject envelope, had knowledge of the envelope’s contents in general, and knowledge of the content of the photographs in particular.

The remaining element of the offense applicable here is the actual distribution. In determining whether the evidence here was sufficient to establish this element of the offense, the appellate court looked first to the statutory definition of “distribute.” “Distribute means to transfer possession of, whether with or without consideration.” 720 ILCS 5/11–21(b)(3) (West 2000). Because the term “possession” was not also defined, the appellate court applied its ordinary and popularly understood meaning. The appellate court concluded:

“The evidence at trial showed beyond a reasonable doubt that the defendant transferred the envelope and its contents to Jessica with instructions to give the envelope to Richard. After this act, Jessica had and held power and dominion over the envelope and its contents. Thus, the defendant distributed the envelope and its contents to a minor, as defined by the statute.” 346 Ill. App. 3d at 485.

Defendant challenges the appellate court’s conclusion, arguing that because the envelope was left with Jessica for a limited and temporary purpose, Jessica had “custody,” rather than “possession,” of the envelope. Defendant further argues that “possession” requires control over the property to the exclusion of all others and that Jessica did not have such control over the envelope. See 346 Ill. App. 3d at 486 (Lytton, J., dissenting).

Defendant’s sufficiency-of-the-evidence argument devolves into an issue of statutory interpretation: What does “possession” mean for purposes of the harmful material statute? We review this legal issue 
de novo
 (
People v. Hanson
, 212 Ill. 2d 212, 216-17 (2004)), mindful that the cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature (
People v. Alexander
, 204 Ill. 2d 472, 485 (2003)).

In support of her argument that custody, but not possession, of the envelope was transferred to Jessica, defendant cites 
People v. Jones
, 106 Mich. App. 429, 308 N.W.2d 243 (1981). In 
Jones
, the defendant appealed his larceny conviction, arguing that the cashier, from whom he received store merchandise without paying, had rightful possession of the property. Thus, according to the defendant, he did not take the property “without the consent of and against the will of the owner,” a required element of larceny. 
Jones
, 106 Mich. App. at 432, 308 N.W.2d at 245. Applying Michigan case law which has distinguished between possession and custody in larceny cases, the appellate court concluded that, at best, the cashier obtained custody of the merchandise, but “lacked the actual authority to consent to the taking of merchandise by defendant without payment.” 
Jones
, 106 Mich. App. at 433-34, 308 N.W.2d at 246.

We are not persuaded that the distinction between custody and possession recognized by Michigan courts for purposes of that state’s larceny statute should guide this court’s interpretation of Illinois’ harmful material statute. Rather, we are guided by our own well-settled principle of statutory interpretation that undefined terms in a statute shall be given their ordinary and popularly understood meanings. 
Gem Electronics of Monmouth, Inc. v. Department of Revenue
, 183 Ill. 2d 470, 477-78 (1998); 
People ex rel. Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 15 (1991); 
People v. Hicks
, 101 Ill. 2d 366, 371 (1984).

“Possession” means “the act or condition of having in or taking into one’s control or holding at one’s disposal.” Webster’s Third New International Dictionary 1770 (1986). See also Black’s Law Dictionary 1201 (8th ed. 2004) (listing the primary definition of “possession” as “[t]he fact of having or holding property in one’s power; the exercise of dominion over property”). Thus, “possession,” as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal.

We recognize that legal conceptions of “possession” are many and varied and that alternate definitions exist in the literature. Black’s Law Dictionary, for example, lists 36 types of possession, from adverse, 
bona fide
, constructive and derivative, to immediate, naked, notorious and precarious. Black’s Law Dictionary 1201-03 (8th ed. 2004). Black’s Law Dictionary also contains a secondary definition of possession which, in line with defendant’s argument, ties the concept of “possession” to exclusive control over property. Black’s Law Dictionary 1201 (8th ed. 2004) (defining “possession” secondarily as “[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object”). We find no indication, however, that the legislature intended to depart from the ordinary and popular meaning of “possession” when it included this term in the harmful material statute.

We note first that the legislature’s use of the phrase “transfer possession of,” in the statutory definition of the term “distribute,” was obviously meant to remove any ambiguity in the statute, not to create ambiguity. Accordingly, the legislature could not have meant for the reader to delve into the legal intricacies of the word “possession” or to draw the sort of technical distinction between “custody” and “possession” that defendant advocates. Further, defendant acknowledges that the legislature desired, through the adoption of this statute, to protect minors from pornographic and other harmful materials. Yet the more narrow definition of “possession” defendant suggests would undermine this legislative goal by limiting the statute’s reach. Under defendant’s reading of the statute, a person could knowingly provide harmful material to a minor but escape prosecution unless the State could demonstrate that the child exercised control over the harmful material to the exclusion of all others.

We conclude that, applying the plain and ordinary meaning of the word “possession,” the evidence here was sufficient to prove beyond a reasonable doubt that defendant knowingly distributed harmful material to a minor. When defendant left the envelope with Jessica with instructions to give it to Richard Jurzak, defendant transferred control of the material. As the appellate court concluded, “Jessica had and held power and dominion over the envelope and its contents.” 346 Ill. App. 3d at 485.

Defendant makes the additional argument that “common sense” dictates that her conviction be reversed. Defendant explains that, taking into account the available case law, common sense leads to the conclusion that the statute was likely intended to punish those who either sell or give pornography to minors or who give minors such material in order to sexually exploit them. She argues, therefore, that the statute should not be used to punish someone like herself who never intended for the child to see the harmful material. See 
People v. Falaster
, 173 Ill. 2d 220 (1996) (where the defendant was charged with distribution of harmful material and aggravated criminal sexual assault of his minor daughter); 
People v. Jones
, 245 Ill. App. 3d 810 (1993) (where the defendant was charged with distribution of harmful material and soliciting for a juvenile prostitute); 
People v. Turner
, 241 Ill. App. 3d 236 (1993) (where the defendant was charged with exhibiting harmful material and aggravated sexual abuse of a 15-year-old girl); 
People v. Esterline
, 159 Ill. App. 3d 164 (1987) (where the defendant was charged with distribution of harmful material and indecent liberties with a child).

We agree with defendant that common sense should not be a stranger to our jurisprudence and that it may play a role in statutory interpretation. See, 
e.g.
, 
People v. Collins
, 214 Ill. 2d 206, 218 (2005) (noting that “[t]he inherent danger caused by the reckless discharge of a firearm into the air” is a matter of “common sense”); 
Quad Cities Open, Inc. v. City of Silvis
, 208 Ill. 2d 498, 509 (2004) (applying common sense in resolving statutory ambiguity); 
People v. Gonzalez
, 204 Ill. 2d 220, 235 (2003) (evaluating fourth amendment issue in traffic-stop case “in light of all the circumstances and common sense”). We disagree, however, with defendant’s contention that a commonsense interpretation of the harmful material statute requires reversal of her conviction.

None of the cases cited by defendant decided or even discussed any issue involving the harmful material statute. Although each defendant was charged with a violation of the statute, the issues on appeal were not related to that charge. In 
Falastar
, the defendant argued on appeal that the trial court erred in excluding certain spectators from the courtroom, permitting a witness to provide hearsay evidence of the victim’s identification of the defendant, and asking a question of one of the prosecution’s witnesses. In 
Jones
, the State challenged the trial court’s dismissal of the count charging the defendant with soliciting for a juvenile prostitute. In 
Turner
, the defendant challenged the credibility of the sexual abuse victim’s testimony, the lack of physical evidence corroborating the victim’s testimony, and the admission of certain opinion testimony. Finally, in 
Esterline
, the defendant challenged his conviction for indecent liberties with a child. These cases have little, if any, relevance to the case now before us.

Even if we assume, for the sake of argument, that 
Falastar
, 
Jones
, 
Turner
 and 
Esterline
 are relevant to the extent they illustrate a recurring scenario–that prosecutions under the harmful material statute tend to be coupled with prosecutions for crimes aimed at sexually exploiting children–common sense does not dictate that this is the 
only
 scenario the legislature envisioned when it adopted the harmful material statute. Rather, common sense suggests that, in light of the wide range of human conduct and the innumerable circumstances under which harmful material could be provided to a minor, the legislature intended the statute to have broad application. This conclusion is also borne out by our jurisprudence and our statutory law.

This court has long acknowledged “the unquestioned right and imperative duty” of government to ensure the welfare of children. 
County of McLean v. Humphreys
, 104 Ill. 378, 383 (1882). As we recently affirmed, “ ‘[t]he performance of this duty is justly regarded as one of the most important of governmental functions.’ ” 
People v. Huddleston
, 212 Ill. 2d 107, 133 (2004), quoting 
County of McLean
, 104 Ill. at 383. See also 
In re D.S.
, 198 Ill. 2d 309, 328 (2001) (recognizing the general power and obligation of the government, under the doctrine of 
parens patriae
, to protect minors and the infirm); 
In re R.C.
, 195 Ill. 2d 291, 305 (2001) (noting that the state, as 
parens patriae
, has a compelling interest in protecting the welfare of children in general). The extensive efforts of our legislature in this regard are reflected in numerous statutes aimed at protecting the physical, emotional and mental health of children and promoting their overall safety and well-being. See, 
e.g
., 325 ILCS 5/1 
et seq.
 (West 2002) (Abused and Neglected Child Reporting Act); 325 ILCS 15/0.01 
et seq.
 (West 2002) (Child Sexual Abuse Prevention Act); 325 ILCS 40/1 
et seq.
 (West 2002) (Intergovernmental Missing Child Recovery Act of 1984); 325 ILCS 45/1 
et seq.
 (West 2002) (Minor Identification and Protection Act); 325 ILCS 50/0.01 
et seq.
 (West 2002) (Missing Children Records Act); 325 ILCS 55/0.01 
et seq.
 (West 2002) (Missing Children Registration Law); 325 ILCS 60/0.01 
et seq.
 (West 2002) (Surgical Institute for Children Act); 410 ILCS 45/1 
et seq.
 (West 2002) (Lead Poisoning Prevention Act); 410 ILCS 205/1 
et seq.
 (West 2002) (Child Vision and Hearing Test Act); 410 ILCS 250/0.01 (West 2002) (Developmental Disability Prevention Act); 625 ILCS 25/1 
et seq.
 (West 2002) (Child Passenger Protection Act); 705 ILCS 80/0.01 
et seq.
 (West 2002) (Child Witness Trauma Reduction Act); 705 ILCS 405/1–1 
et seq.
 (West 2002) (Juvenile Court Act of 1987); 720 ILCS 130/0.01 
et seq.
 (West 2002) (Neglected Children Offense Act); 720 ILCS 150/0.01 
et seq.
 (West 2002) (Wrongs to Children Act); 720 ILCS 505/0.01 
et seq.
 (West 2002) (Abandoned Refrigerator Act); 720 ILCS 555/0.01 
et seq.
 (West 2002) (Child Curfew Act; 720 ILCS 670/0.01 
et seq.
 (West 2002) (Sale of Immoral Publications to Children Act); 720 ILCS 675/0.01 
et seq.
 (West 2000) (Sale of Tobacco to Minors Act); 740 ILCS 58/1 
et seq.
 (West Supp. 2003) (Drug or Alcohol Impaired Minor Responsibility Act); 820 ILCS 205/1 
et seq.
 (West 2002) (Child Labor Law); 820 ILCS 210/0.01 
et seq.
 (West 2002) (Disclosure of Offenses Against Children Act). Various sections of the Criminal Code of 1961 (720 ILCS 5/1–1 
et seq.
 (West 2002)) also seek to protect children. See, 
e.g.
, 720 ILCS 5/11–6 (West 2002) (indecent solicitation of a child); 720 ILCS 5/11–9.1 (West 2002) (sexual exploitation of a child); 720 ILCS 5/11–9.3 (West 2002) (presence within school zone of child sex offender); 720 ILCS 5/11–15.1 (West 2002) (soliciting for a juvenile prostitute); 720 ILCS 5/11–19.2 (West 2002) (exploitation of a child); 720 ILCS 5/11–20.1 (West 2002) (child pornography); 720 ILCS 5/12–10.1 (West 2002) (piercing the body of a minor); 720 ILCS 5/12–14.1 (West 2002) (predatory criminal sexual assault of a child); 720 ILCS 5/12–21.5 (West 2002) (child abandonment); 720 ILCS 5/33D–1 (West 2002) (contributing to the criminal delinquency of a juvenile). Against this backdrop we are not prepared to say that the legislature, which is empowered to declare and define conduct constituting a crime (
People v. Steppan
, 105 Ill. 2d 310, 319 (1985)), did not intend to penalize defendant’s conduct.

Defendant contends that she is guilty only of a “lapse in judgment,” 
i.e.
, she did not expect 12-year-old Jessica to open the envelope, which was addressed to Jessica’s father and taped shut. Merely referring to her conduct as a lapse in judgment does not remove defendant from the ambit of the statute. Virtually all unlawful conduct can be characterized as a “lapse in judgment.” Further, the statute expressly provides four affirmative defenses to a charge of distribution of harmful material. 720 ILCS 5/11–21(e) (West 2000). Defendant does not suggest that any of the statutory affirmative defenses somehow apply.
(footnote: 2) We note also that defendant’s contention that she did not expect Jessica to open the envelope is belied by the record.

Evidence established that defendant left the photographs in a paper envelope sealed with a few pieces of tape. The envelope, on which was affixed a Christmas stamp, was delivered by defendant two days after Christmas. The name defendant wrote in the place for the return address (“J. Jurzak”) suggested that the envelope was from one of Jessica’s relatives. Notwithstanding the sensitive content, defendant left this Christmas greeting with Jessica. As the trial court aptly concluded, under these circumstances, defendant “[ran] the risk *** that [Jessica] may open it.”

Moreover, the record also established that defendant wrote a personal note to Heather Jurzak on the backside of one of the sexually explicit photographs commenting in crude fashion on her relationship with Richard Jurzak. Thus, any claim by defendant that she only intended Richard to see the photographs rings hollow. Defendant intended the photographs to have a wider audience. She clearly succeeded. Regrettably, it was at the expense of a 12-year-old girl.

Finally, defendant argues, in conclusory fashion, that if her conviction is allowed to stand, “it would mean that other innocent people could be prosecuted for the offense of distributing harmful material.” Defendant cites no authority in support of this proposition. A point raised in a brief but not supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)) and is therefore forfeited. 
People v. Fair
, 193 Ill. 2d 256, 269 (2000); 
People v. Franklin
, 167 Ill. 2d 1, 20 (1995). See also 
In re Marriage of Bates
, 212 Ill. 2d 489, 517 (2004) (“reviewing court is entitled to have issues clearly defined with relevant authority cited”).

CONCLUSION

For the reasons discussed above, we affirm the judgment of the appellate court affirming defendant’s conviction for distributing harmful material to a minor.

Affirmed
.

CHIEF JUSTICE McMORROW, dissenting:

The appeal in the case at bar presents this court with its first opportunity to construe section 11–21 of the Criminal Code of 1961 (720 ILCS 5/11–21 (West 2000)). In resolving the appeal, the majority employs two contradictory analyses and, thus, provides little guidance on the proper construction of the statute. For this and other reasons, I cannot join the majority opinion and respectfully dissent.

Section 11–21 of the Code provides in subsection (a):

“A person who, with knowledge that a person is a child, that is a person under 18 years of age, or who fails to exercise reasonable care in ascertaining the true age of a child, knowingly distributes to or sends or causes to be sent to, or exhibits to, or offers to distribute or exhibit any harmful material to a child, is guilty of a misdemeanor.” 720 ILCS 5/11–21(a) (West 2000).

The statute defines harmful material and provides that “[d]istribute means to transfer possession of, whether with or without consideration.” 720 ILCS 5/11–21(b)(1), (b)(3) (West 2000). “Knowingly,” pursuant to the statute, “means having knowledge of the contents of the subject matter, or recklessly failing to exercise reasonable inspection which would have disclosed the contents thereof.” 720 ILCS 5/11–21(b)(4) (West 2000).

At defendant’s trial, evidence established that on December 27, 2001, defendant went to the home of Richard Jursak, her former paramour. Defendant saw Richard’s 12-year-old daughter, Jessica, in the garage and asked if Richard was home. After learning that Richard was not at home, defendant placed a sealed, stamped, business-sized envelope, addressed to Jessica’s father, on a weight bench in the garage and asked Jessica to give the envelope to her father. In addition to being sealed, the envelope was taped shut. After defendant left, Jessica opened the envelope. Inside the envelope was a letter to Richard along with several photos. Some of the photos were sexually explicit.

Defendant concedes that she knew the envelope contained some sexually explicit photos and that these pictures fit the statutory definition of material that is harmful. Consequently, the harmfulness of the photos is not at issue, nor are the depictions in the photos materially relevant to the matters on appeal.

Defendant argues that her conduct does not constitute “distribution” within the meaning of the statute because her unrebutted testimony at trial was that she never intended that the child would view the harmful material contained inside the sealed envelope. Moreover, because the envelope was securely sealed and addressed to the child’s father, defendant argues that she had no reasonable expectation that the child would ever see the harmful material contained inside the envelope. According to defendant, to prove her guilty of “knowingly distributing” harmful material to a minor, within the meaning of the statute, there must be evidence that she knew or should have known that her conduct would result in a child’s viewing harmful material. In other words, defendant contends that, interpreting section 11–21 properly, the offense of “distributing” harmful material is proven only if it is shown that a child was the intended recipient of the harmful material or that the defendant’s conduct created a reasonably foreseeable risk that a child would be exposed to harmful material.

The majority acknowledges that the issue to be resolved in this appeal is whether defendant “knowingly distributed” harmful material to a minor within the meaning of the statute and that this is a question of statutory construction. Slip op. at 4-5. Recognizing that the statutory definition of the term “distribute” is “to transfer possession of,” the majority concludes that the question of whether “distribution” took place in the case at bar may be resolved by adopting the “plain and ordinary meaning” of the word “possess.” Slip op. at 5-6. Accordingly, the majority determines that “distribution,” within the meaning of the statute, occurs when a minor “has or takes control of the subject property.” Slip op. at 6. Applying this interpretation to the case at bar, the majority holds that defendant committed the offense of distributing harmful material to a minor at the moment defendant gave the sealed envelope to Jessica. Slip op. at 6-7.

Under this construction of the statute, the crime is completed by the mere transference of possession of a container holding harmful material,
 i.e.
, defendant’s simple act of giving Jessica the sealed envelope containing harmful material constitutes “distribution.” Therefore, under this construction, consideration need not be given to the defendant’s intent. And risk, 
i.e.
, the foreseeability or likelihood that the defendant’s conduct would result in a child being exposed to harmful material, is not a factor to be taken into account.

Notwithstanding the above, the majority, later in the opinion, abandons its own narrow construction of the statute and adopts a construction which focuses on risk and the defendant’s intent. Addressing defendant’s claim that she did not expect Jessica to open the envelope, the majority recites several facts of the case and then states:

“As the trial court aptly concluded, under these circumstances, defendant ‘[ran] the risk *** that [Jessica] may open it.’

*** Thus, any claim by defendant that she only intended Richard to see the photographs rings hollow.” Slip op. at 10-11.

At this point in the opinion, the majority is clearly engaging in an analysis that takes into consideration foreseeability, as well as defendant’s intent, when determining whether a crime has been proven. This analysis, however, is impossible to reconcile with the majority’s earlier interpretation of the statute. Because the majority adopts two contradictory positions, I cannot join the majority opinion.

The fact that the majority has adopted two, contradictory positions in its opinion is sufficient reason to reject it. But it is not the only reason I do not join. I also find the majority’s analysis to be flawed. The majority holds, initially, that the offense of “distributing” harmful material to a minor is committed by the mere transference of possession of a container holding harmful material. But the logical consequence of interpreting section 11–21 in this way is that criminal liability may be imposed in 
all situations 
when possession of a container is transferred, even when the container is sealed in such a way that a child would have no ability to open the container and, thus, there is no possibility that a child would ever be exposed to the harmful material inside. Such an analysis cannot be correct. The legislature could not have intended such an absurd result. See 
People v. Swift
, 202 Ill. 2d 378, 385 (2002) (when interpreting statutes, a reviewing court must avoid constructions which would produce absurd results);
 People v. Pullen
, 192 Ill. 2d 36, 42 (2000) (in interpreting a statute we must assume that the legislature did not intend an absurd or unjust result).

Nothing in the statutory language suggests that the legislature contemplated the situation where, as in the case at bar, harmful material is “distributed” within a sealed container, a child was not the intended recipient, and the alleged offender had no intention that the harmful material be viewed by a minor. Thus, I believe that when determining legislative intent, it would be more helpful to construe the term “distribute” in light of the statute’s purpose. See 
People v. Pullen
, 192 Ill. 2d 36, 42 (2000) (when interpreting statutes we may consider the reason and necessity for the law and the evil intended to be remedied). In my view, the evil which the legislature intended to remedy by enacting section 11–21 is the exposure and the risk of exposure of children to harmful material. Thus, when interpreting section 11–21, it is appropriate to consider whether the person intended to expose a child to harmful material or whether the person’s conduct created a foreseeable risk of exposing a child to harmful material.

The affirmative defenses available under the statute support this interpretation. Pursuant to section 11–21(e)(3), it is not an offense under the statute if a person distributes harmful material to a minor if the person demanded proof of age and reasonably believed, based on upon documents proffered, that the recipient of the harmful material was not a minor. Also, under section 11–21(e)(4), it is not an offense within the meaning of the statute if the harmful material was sold or distributed through an advertisement “as where the order or request for such harmful material was transmitted by mail, telephone, or similar means of communication, and delivery of such harmful material to the child was by mail, freight, or similar means of transport,” and the advertisement “required the purchaser to certify that he was not under 18 years of age and that the purchaser falsely stated that he was not under 18 years of age.” Based on these available affirmative defenses, a person who transfers possession of harmful material to a child has not violated the statute if the person can show that there was no intent that the harmful material be sold to, given to, sent to, or viewed by 
a child
, or by showing that the child obtained the harmful material through his or her own purposeful actions.

Also, the statute, itself, makes reference to intent when, in subsection (c), entitled “Interpretation of Evidence,” it provides that “[t]he predominant appeal to prurient interest of the material” may be judged with reference to the “intended or probable recipient group.” 720 ILCS 5/11–21(c) (West 2000).

 The fact that the legislature permitted consideration to be given in some instances to the particular circumstances surrounding a “distribution” of harmful material suggests that the legislature did not intend to foreclose such an inquiry when called for by the situation. Reading the statute as a whole, it appears that the legislature intended to proscribe the intentional or foreseeable exposure of children to pornographic or other harmful material. Thus, I would conclude that the offense of distributing harmful material to a minor is proven only if the evidence shows that the child was the intended recipient of the harmful material or, under the attendant circumstances, the person’s conduct creates a reasonably foreseeable risk that a child will be exposed to harmful material. To some extent, the majority has, in practice, adopted this approach. In my view, however, when the majority undertakes its analysis, it reaches the wrong conclusions.

As noted earlier, the majority initially finds that “distribution” within the meaning of section 11–21 simply requires a transference of possession. Slip op. at 6-7. Under this construction, intent and risk are irrelevant. Later, however, the majority holds that defendant’s claim that she did not expect Jessica to open the envelope “is belied by the record.” Slip op. at 10. According to the majority, defendant should have expected that Jessica would have opened the envelope entrusted to her because the envelope was “sealed with a few pieces of tape” and was a “Christmas greeting” with a Christmas stamp on it, delivered around Christmastime. Slip op. at 10. The majority also notes that “J. Jursak” was written in the return-address section of the envelope and that Jessica testified this fact led her to believe that the envelope was from a relative. Slip op. at 10.

But, contrary to the majority, the envelope was not a “Christmas greeting.” The envelope did not resemble a Christmas card. It was a plain, business-sized envelope that was clearly addressed to Richard, Jessica’s father. Furthermore, the envelope was not simply secured with “a few pieces of tape.” The record supports defense counsel’s assertion at trial that the envelope was “double-sealed,” 
i.e.
, that it was both sealed and the seal was completely taped. In fact, the trial court found that the envelope was securely sealed.

It is also clear from the testimony that Jessica knew defendant. The record shows that Richard had had an affair with defendant for more than a year. Jessica admitted at trial that she had been to defendant’s home on numerous occasions–more than 25 times. Under these circumstances, Jessica’s claim that she opened the envelope because she believed it was from a relative is suspect, at best.

Finally, none of the facts which the majority cites negates defendant’s assertion that she did not intend or expect 
a child 
to view the photos inside the envelope. The note to Richard’s wife, Heather, found on the back of one of the photos, was a taunt. Defendant hoped to rekindle the flames of her recently ended romance with Richard and, perhaps, inflame Heather at the same time. But even if that were so, the note does not indicate that defendant intended or expected 
a child 
to view the photos and, for this reason, the note does not support the finding that defendant committed the offense of distributing harmful material to a minor.

I, like the majority, find it extremely unfortunate that a 12-year-old child saw the few unsavory photographs at issue here, particularly since the photos included the child’s father. Nevertheless, we should not let that fact distort our legal analysis. What is at issue here is the proper construction of section 11–21. Our duty as judges is, as always, to interpret the law and determine what the General Assembly intended when it enacted the law.

The bench and bar needs guidance on the proper construction of section 11–21. In the case at bar, the trial court found that the statute was “tricky.” The appellate court never addressed defendant’s claim that she did not have the requisite mental state. Justice Lytton dissented, stating:

“The majority attempts to rationalize Jessica’s ‘control,’ but merely restates the dictionary definition as if it were a recitation of supporting facts. Instead of giving us a factual basis for its legal conclusion, the majority simply cites a legal conclusion, 
i.e.
, ‘Jessica exercised control over the envelope and its contents.’ *** The majority gives us nothing but a legal conclusion to affirm this conviction.” 346 Ill. App. 3d at 486 (Lytton, J., dissenting).

Today, the majority provides no greater guidance. Initially, the majority holds, similar to the appellate court, that “distributing” harmful material to a minor within the meaning of the statute requires only a transference of property. Slip op. at 6-7. Under this construction, the offense is proven simply by showing that a container holding harmful material has been given to a child. Subsequently, the majority affirms defendant’s conviction for distributing harmful material to a child based on its finding that, under the circumstances of this case, defendant “ran the risk” that Jessica would open the envelope given to her and, in that way, a child was exposed to harmful material. Slip op. at 10-11. In my view, these two holdings are irreconcilable and both analyses are incorrect.

For all of the reasons stated, I dissent.

JUSTICE FREEMAN joins in this dissent.

FOOTNOTES
1:     
1
“Material,” which includes pictures, will be considered “harmful” “if, to the average person, applying contemporary standards, its predominant appeal, taken as a whole, is to prurient interest, that is a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters, and is material the redeeming social importance of which is substantially less than its prurient appeal.” 720 ILCS 5/11–21(b)(1), (b)(2) (West 2000). 

2:     
2
The statute provides an affirmative defense under the following circumstances: (1) where certain libraries circulate harmful material to a minor but the circulation “is in aid of a legitimate scientific or educational purpose”; (2) where a parent distributes harmful material to his or her child; (3) where the defendant acted in reliance on certain documents as proof of the child’s age; and (4) where the distribution results from an advertisement for harmful material and the advertisement required the purchaser to certify that he or she is not under 18 years of age. 720 ILCS 5/11–21(e) (West 2000).